who stepped aside from the alleyway, fell into the hole,. which had been left unguarded. The court was of opinion that the open space on the defendant's property, on which the hole was dug, had been left open for the use of the general public as an advantage to the owner of the hotel, and treated the case before it as one where a licensee by invitation, express or implied, had been injured. Where there is no invitation, express or implied and the one who uses the private property does so by bare permission, the well-settled rule is that he must use the property as he finds it, and the owner is held to no greater degree of care than to abstain from affirmative negligence. Larmore v. Crown Point Iron Co., 101 N. Y. 391, 4 N. E. 752, 54 Am. Rep. 718; Splittorf v. State of New York, 108 N. Y. 205, 15 N. E. 322; Morris v. Brown, 111 N. Y. 318, 18 N. E. 722, 7 Am. St. Rep. 751; Bond v. Smith, 113 N. Y. 378, 21 N. E. 128; Cusick v. Adams, 115 N. Y. 55, 21 N. E. 673, 12 Am. St. Rep. 772; Murphy v. City of Brooklyn, 118 N. Y. 575, 23 N. E. 887; Sterger v. Van Sicklen, 132 N. Y. 499, 30 N. E. 987, 16 L. R. A. 640, 28 Am. St. Rep. 594; Collins v. Decker, 120 App. Div. 645, 105 N. Y. Supp. 357.

In the case at bar the plaintiff was not passing along a public highway when she stepped aside into the coal hole. She was on private property, on which she had entered for her own purpose. She was not there by any invitation from the owner in connection with its business or the purpose for which the place was maintained. She used the defendant's property that night simply because she saw others using it. Her right to be there at all rested upon no better basis than a mere permission. The defendant was guilty of no affirmative act of negligence against her. It had a legal right to have the coal hole where it was. The law cast upon it no duty to anticipate that some one would enter its property on a dark night, for purposes not connected with its use of the property, and step into the coal hole located between the rails of one of its switch tracks.

I think the question of the defendant's liability should not have been submitted to the jury under these circumstances, and I recommend, therefore, that the judgment and order be reversed, and a new trial granted; costs to abide the event.

WOODWARD, THOMAS, and RICH, JJ., concur. HIRSCHBERG, P. J., dissents.

---

CAHILL v. STANDARD MARINE INS. CO., LIMITED, OF LIVERPOOL.

(Supreme Court, Appellate Division, Second Department. July 29, 1910.)

1. INSURANCE (§ 412*)—MARINE INSURANCE—CONTRACTS—CONSTRUCTION.

A policy, insuring against loss for which a tug may become liable to any vessels or cargoes by stranding while they shall be in tow of the tug either alongside or at the end of a hawser, does not cover a stranding of a vessel resulting from the negligent cutting of the hawser and a negligent abandonment of the tow.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 412.*]

---

2. INSURANCE (§ 616½*)—ACTION ON POLICY—CONCLUSIVENESS OF JUDGMENT
   —IN FORMER ACTION.
   A decree of the federal court that a tug was liable to the owners of a
   vessel and cargo for the stranding of the vessel resulting from the tug
   negligently sending her tow adrift forecloses the liability of the tug
   against the world, and, in an action against one insuring against any
   loss for which the tug may become liable for injury to vessels or cargoes
   by stranding while they shall be in tow of the tug to recover the amount
   paid in satisfaction of the decree, the decree conclusively shows the cause
   of the stranding, and evidence that the tow was excusably sent adrift,
   and not negligently, is inadmissible.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1224; Dec. Dig.
   § 616½.*]

   Hirschberg, P. J., and Woodward, J., dissenting.

Action by Peter Cahill against the Standard Marine Insurance
Company, Limited, of Liverpool. Exceptions ordered to be heard in
the first instance by the Appellate Division overruled, and judgment
directed for defendant.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS,
BURR, and THOMAS, JJ.

John F. Foley (Frank A. Spencer, Jr., on the brief), for plaintiff.
James K. Symmers (James Emerson Carpenter, on the brief), for
defendant.

THOMAS, J. Defendant insured plaintiff against any loss or
damage for which his tug should become legally liable by reason of
injury "to any other vessels * * * their freights * * * on
cargoes * * * by stranding * * * while they shall be in tow
f the said tug, either alongside or at the end of a hawser." The
plaintiff's servants in bad weather cut the hawser, and the tow, there-
after unattended by the tug, stranded. The plaintiff petitioned to limit
his liability. Randerson, owner of the tow, and another severally an-
swered, and alleged that the hawser was negligently cut and the tow
negligently abandoned, and also charged other acts of negligence on
the part of the tug and her owner. The issues were tried before
Judge Brown, and by his decision and the decree thereon, affirmed
by the Circuit Court of Appeals, the tug was held liable to Randerson
and others, claimants, and the plaintiff's liability limited to the value
thereof. The decree, after stating the payments to be made, pro-
vided:

"The petitioner upon making such payments is hereby forever discharged
from all and every claim or demand arising from or growing out of the said
disaster and stranding and from all and any other claims than as aforesaid."

The plaintiff paid the sums decreed, and in this action seeks to re-
cover the same, and the legal expenses of the proceedings in the fed-
eral court, to the amount stated in the policy. In short, plaintiff has
paid pursuant to the decree and asks the defendant to indemnify him.
The plaintiff pleaded the decree and proved his liability by it. The
decree does establish the tug's liability for stranding her tow; but
it appears that the liability is predicated solely upon the negligent

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cutting of the hawser and negligent abandonment of the tow. But liability resting on such grounds is not insured against by the policy. The policy insures against injury resulting in liability while the vessels are in tow. Admitting for present purposes that the policy covers stranding when the tow is sent, and left adrift, prudently, and hence excusably, it would not extend to stranding resulting from the tug negligently sending and leaving her tow adrift. Assertion of defendant's liability for injury so caused disputes the policy in its vital expression and plainest meaning.

The plaintiff, having pleaded the decree and payment accordingly, and proved the decree, now asks to show that his liability so discharged was not caused by negligently cutting the hawser and abandoning the tow, and that to that end evidence aliunde the federal proceedings may be received, and a jury permitted to find that plaintiff is liable to somebody on some other grounds. Here is a decree paid, for which repayment is sought, and plaintiff would have a jury eliminate the findings on which it is based, declare that they have no legitimate existing or binding force, that the tow was not wrongfully, but excusably and rightfully, sent adrift, that it was defensibly and dutifully, not negligently, abandoned, and that there are other valid grounds of plaintiff's liability to Randerson and others, not discovered by Judge Brown, a jurist of acknowledged learning in maritime jurisprudence, grounds also neglected by the Circuit Court of Appeals, that form the real basis of the plaintiff's liability to the owner of the tow and others injured by the stranding. In that way the jury would depose the federal judiciary, seize upon its judgment, set at naught its reasons, substitute new inferences for holding the plaintiff liable, and so enable him to indemnify himself for money paid in satisfaction of the judgment. But consider that no person can again assert the liability of the plaintiff or the tug for the stranding. The limited liability proceedings foreclosed the world. Every man has had his day in court. Every charge that could be made to establish liability has been.

The court has found that there are only two grounds of liability, to wit, negligently cutting the hawser and abandonment of the tow. For such culpability alone the plaintiff is liable, and such culpability does not entitle him to reimbursement under the policy. If the jury should theoretically find the plaintiff is liable on some other ground, there could be no person to whom he could be so actually liable, for there is and can be no person to enforce such liability, inasmuch as it has been adjudicated between plaintiff and all men that there is no such liability. So the only question is whether this court will permit a jury to place the plaintiff's liability under the judgment of another tribunal upon a ground not approved by it in place of grounds adopted by it as the basis of its decree. Such a proposition denounces itself. In view of the pleading and the scope and effect of the limited liability proceedings, I have ignored the provision in the policy to the effect that the liability of the tug shall first be determined by a suit at law. The liability has been determined in a proceeding universal in its binding scope, and this action is, and can be, based upon it only.

Nor is it necessary to advert to evidence of the grounds of the decision in the federal court. The opinion is the decision, and the assignment of errors also shows the grounds.

I advise that the exceptions be overruled, and judgment directed for defendant.

JENKS and BURR, JJ., concur.

WOODWARD, J. (dissenting). The defendant made and delivered its standard tower's liability policy to the plaintiff, whereby it undertook, for a premium of $750, to insure the steam tug O. L. Hallenbeck in the sum of $15,000 for a period of one year from the 23d day of November, 1898 (so long as the said tug was confined to certain waters along the Atlantic seaboard), against legal liabilities for "loss or damage and charges as herein provided, when such legal liability of said tug shall have been incurred or caused by injury to any other vessels or crafts, their freights then being earned on cargoes on board of such vessels or crafts at the time of the disaster $^{and}$/$_{or}$ cargoes, by stranding $^{and}$/$_{or}$ collision while they shall be in tow of the said tug, either alongside or at the end of a hawser," etc. The plaintiff entered into a contract on the 3d day of October, 1899, to convey the dredge Empire State, four dumping scows, and a water boat from Peekskill, N. Y., to Plymouth, Mass., and while in the performance of this contract, and while off Cape Cod on the evening of October 6, 1899, the said tug, with its tow, encountered a storm, coming from a quarter which was considered dangerous, and in the course of the navigation the master of the said tug, in consultation with those in authority, decided that it was necessary to cut the tow adrift in order to save the lives of the crew upon the barge. This was done, and the barge crew were taken on board the tug, and the tow drifted upon the beach, and a portion of it was destroyed; the remainder being damaged. The policy provided, among its conditions, that it should not cover any of the losses insured against "unless the liability of the said tug for such loss or damage shall have been first determined by a suit at law or otherwise, if this company shall so elect," and the plaintiff here filed a l'bel in the United States District Court for the Southern District of New York for a limitation of liability, asking that neither the owner nor the steam tug O. L. Hallenbeck be adjudged liable for any loss or damage arising out of said contract of towage. The owners of the tow and their insurers answered the libel, praying for a right to contest the limitation and exemption from liability and for affirmative relief. This proceeding resulted in a decree of the District Court, holding the said tug liable in the sum of $25,451.97 and costs, in which sum the said tug was obliged to respond to the owners of the dredge and scows. This decision was carried by appeal to the United States Circuit Court of Appeals for the Second Circuit, where the decree was affirmed. The plaintiff then brought this action to recover his insurance, and the learned court below has sent the case here to be heard on the exceptions in the first instance.

The rulings upon the trial appear to have proceeded upon the theory

that the plaintiff in this action was concluded by the decree of the District Court; that, by the provision in the contract of insurance which permitted the defendant to require the judgment of a court of law upon the liability of the tug, such judgment became a part of the contract; and that the plaintiff could not, as between himself and the defendant, question the findings of the court which determined the liability between the tug and the tow. The decree of the District Court, affirmed by the Court of Appeals, held in substance that the tug was liable for cutting the hawser in the first instance, but that, even assuming the liability to the tow did not attach upon the cutting of the hawser, it was negligent on the part of the plaintiff to abandon the tow without making any effort to reattach the hawser after taking the crew from the barge, and upon the trial of this action the plaintiff was not permitted to prove the conditions surrounding the accident, and which tended to show that it was impracticable to reattach the hawser in the storm which was upon the navigators of the tug, on the theory that the decree was conclusive upon this point, and that the damage to the tow was received at a time when it was not, in the language of the contract of insurance, "either alongside or at the end of a hawser."

I am of the opinion that this is an erroneous view of this case; that the contract of insurance, fairly read and construed, covered the voyage from Peekskill to Plymouth. The barge and scows were "in tow of the said tug, either alongside or at the end of a hawser," for this trip; they were, so far as appears from the record, properly attached, and were proceeding in the orderly course of navigation between the points contemplated in the contract between the tug and the tow; they were in the actual transaction of the line of business which the contract of insurance contemplated, and while it was, no doubt, the duty of the tug to use all proper efforts to preserve the tow, it was not bound to retain the hawser connection with the same when such action would imperil the lives of human beings, nor was it bound to take reckless chances in picking up the tow when it was cast adrift in order to retain its rights under its policy of insurance. The plaintiff had paid $750 premiums; he paid this sum to be protected against stranding or collision while in the pursuit of his vocation as a tugboat navigator, with its incident of towing barges, scows, etc., and, independently of any litigation between himself and a third party, he is entitled to the benefits of his contract—to a fair trial upon the merits under his contract with the defendant. The provision of that contract that the defendant should not be liable unless the legal liability of the tug was determined in an action at law or otherwise, at its election, was a provision inserted for the benefit of the insurer; it was designed to give the insurer the benefit of a preliminary trial to determine whether the tug owed a liability for damages sustained by other vessels, and, if it had been intended that the liability of the defendant to the plaintiff was to depend upon the result of such preliminary litigation, that fact should have been indicated in the contract.

Of course, if the tug owed no liability for the damages, then the defendant would owe nothing to the plaintiff upon the policy; but it does

not follow that where the liability of the tug is determined the plaintiff is bound by the particular findings of fact made in the court which tried the preliminary litigation, and particularly in a case where the findings of fact are not formally made, but appear to rest upon the opinion of the court. In this case it can hardly be questioned that the defendant would be liable to the plaintiff if the cutting of the hawser in an emergency was the proximate cause of the damages, for the damages would then have been sustained while the tow was at the end of a hawser, and it is only because the District Court went farther, and held that it was also negligent not to attempt to reattach the hawser, and upon this foundation, and because the damages resulted while the tow was drifting about in the storm, the defendant urges that it is not liable to the plaintiff. Such a contract, I think, was not within the contemplation of either of the parties, and, the plaintiff having been compelled to pay damages by reason of the stranding of the tow, I am of the opinion that the ruling of the court was erroneous, and that the exception should be sustained, and a new trial ordered.

HIRSCHBERG, P. J., concurs.